**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **RANDAL C. TURNER,** | ) | |
| Plaintiff, | ) ) ) | Case No.1:05CV00014 |
| v. | ) ) | **OPINION** |
| **JO ANNE B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) ) | |
| Defendant. | ) | |

In this social security case, I remand the case to the Commissioner for further proceedings.

*I. Background.*

Randal C. Turner filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under title II of the Social Security Act, 42 U.S.C.A. § 401-433 (West 2003 & Supp. 2005). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial

evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Turner applied for benefits on June 23, 2003, alleging disability since January 31, 1991, and received a hearing before an administrative law judge ("ALJ") on August 25, 2004. By decision dated September 3, 2004, the ALJ found that the plaintiff was disabled for purposes of Supplemental Security Income ("SSI") benefits, but that he was not eligible for DIB based upon expired earnings. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## II. Facts.

Turner was forty-seven years old at the time of the ALJ hearing, a younger individual under the regulations. He has a high school education plus four years of college and last worked as a Department of Motor Vehicles ("DMV") registration clerk.

In regard to the plaintiff's alleged disability, the ALJ considered medical evidence and opinions of Jeffrey Leblang, LCP; Hugh Tenison, Ph.D.; Brian Warren, M.D.; Sharon Hughson, Ph.D.; and Wise County Behavioral Health Services. At the plaintiff's administrative hearing, the ALJ also considered the testimony of Cathy Sanders, a vocational expert ("VE").

On July 1, 2003, the plaintiff visited Jeffrey Leblang, Licensed Counseling Professional ("LCP"), at Cumberland Mountain Community Services for crisis counseling. (R. at 97.) Leblang reported a history of social phobia and public speaking anxiety with an onset date of twelve years or younger. (*Id.*) Leblang's report also noted that the plaintiff had problems with public speaking in high school and avoided classes in college that contained public speaking components. (*Id.*) Leblang's report set forth the plaintiff's job history and family structure, noting that the plaintiff's father and grandmother died within four months of each other. (*Id.*) The report also noted that the plaintiff feels uncomfortable in crowds, is better able to converse one-to-one than as part of a group, was depressed, and had concluded that he was never going to make his mark in the world. (*Id.*) The mental status examination revealed restless motor activity, depressed and anxious mood, decreased energy level, and limited insight and judgment. (*Id.*) Leblang discussed the possibility that an antidepressant such as Paxil may help to reduce the plaintiff's

social anxiety, but the plaintiff indicated that he would prefer not to take any medications. (*Id.*) The plaintiff expressed some ambivalence about pursuing counseling but decided to schedule another appointment on July 31, 2003. (*Id.*) Leblang diagnosed social phobia and dysthymic disorder. (R. at 101.)

Leblang contacted the plaintiff on July 25, 2003, to reschedule the July 31, 2003, appointment because of a conflict in his schedule. (R. at 96.) The plaintiff informed Leblang that he had planned to call him on July 28, 2003, to cancel his July 31, 2003, appointment. (*Id.*) The plaintiff explained that although he found the July 1, 2003, discussion helpful and he felt better after the session, by the time he entered his car he was already experiencing a sense of dread about returning. (*Id.*) The plaintiff stated that he has been continuing to entertain the thought that he is genetically/constitutionally determined to experience public speaking anxiety/social phobia and that perhaps this was a condition that could not be helped through counseling. (*Id.*) Leblang discussed several options with the plaintiff and the plaintiff chose to set aside one month to read about social phobia and public speaking anxiety. The plaintiff was to call Leblang by the end of August to indicate whether he would like to continue with the counseling. (*Id.*)

In a quarterly review of the individual services plan, Leblang noted that the plaintiff had not contacted him as of September 30, 2003, and he would thus close his

- 4 -

Case 1:05-cv-00014-JPJ-PMS   Document 10   Filed 03/27/06   Page 4 of 18   Pageid#: 47

case. (R. at 94.) Leblang noted that progress towards the alleviation of the plaintiff's chief complaints could not be adequately ascertained due to the fact that he only attended the initial appointment. (*Id.*) In the Case Closure/Discharge Summary dated September 30, 2003, Leblang noted that the plaintiff would need to develop increased motivation to attempt to overcome expressed barriers to counseling in order for counseling to be viable. (R. at 93.)

On September 23, 2003, Dr. Brian E. Warren evaluated the plaintiff. On mental status examination, the plaintiff was described as an extremely anxious and depressed individual who was restless and fidgety. He smiled with strain and was inappropriate at times. (R. at 121.) Dr. Warren stated that the plaintiff's history of social phobia was clearly evident. (*Id.*) The plaintiff described symptoms including sadness, feeling of hopelessness, difficulty concentrating, fatigue, inability to make decisions, and memory problems. (*Id.*) Dr. Warren noted the plaintiff usually sleeps on the top of the sheets with his clothes on in case he has to escape quickly if necessary. (*Id.*) Dr. Warren's report also noted that the plaintiff feels depressed on a daily and persistent basis. (*Id.*) The plaintiff has feelings of guilt about not being able to work. (*Id.*) Dr. Warren noted that the plaintiff's behaviors were obsessive-compulsive and noted instances of compulsively checking door locks, compulsively checking the stove, and hand washing fifteen to twenty times per day. (*Id.*) Dr.

Warren opined that the plaintiff's multiple disorders markedly interfered with all aspects of the plaintiff's daily life. (R. at 122.)

Dr. Warren stated that the overall mental status showed a severely anxious and depressed individual who had chronic generalized symptoms of anxiety and depression, as well as more focused, phobia anxiety disorders such as social phobia, agoraphobia, and obsessive compulsive disorders. (R. at 122.) Dr. Warren diagnosed a panic disorder with agoraphobia; a social anxiety disorder; a generalized anxiety disorder with obsessive-compulsive symptoms; a major depressive disorder, severe; and an avoidant personality disorder. (R. at 123.) In assessing the plaintiff's mental limitations, Dr. Warren opined that the plaintiff has serious limitations in his ability to relate to coworkers, use judgment, interact with supervisors, maintain attention and concentration, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Dr. Warren further opined that the plaintiff had no useful ability to deal with the public and deal with work stresses. (R. at 126.)

Dr. Tenison performed a psychiatric review technique on the plaintiff on October 29, 2003. (R. at 134.) In the report, Tension noted depressive syndrome, social anxiety disorder, and avoidant personality disorder. (R. at 137, 139, 141.) Dr. Tenison noted moderate functional limitation in (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, and (3) difficulties in

maintaining concentration, persistence, or pace. (R. at 144.) In a mental residual functional capacity assessment, Tension noted that the plaintiff was moderately limited in his ability to concentrate for extended periods, to understand and remember detailed instructions, to carry out detailed instructions, to perform activities within a normal schedule, to maintain regular attendance and to be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unusual number and length of rest periods. (R. at 149-50.)

According to Dr. Tenison, the plaintiff also was moderately limited in the ability to interact appropriately with the general public, the ability to ask simple questions or request assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, the ability to respond appropriately to changes in the work setting, the ability to travel in unfamiliar places or use public transportation, and the ability to set realistic goals or make plans independently of others. (*Id.*) The plaintiff was not significantly limited in the ability to remember locations and work-like

procedures, the ability to understand and remember very short and simple instructions, the ability to carry out very short and simple instructions, the ability to sustain an ordinary routine without special supervision, the ability to make simple work-related decisions, and the ability to be aware of normal hazards and take appropriate precautions. (*Id.*)

At the request of Disability Determination Services, Dr. Sharon Hughson examined the plaintiff on April 12, 2004. (R. at 166.) The plaintiff reported extreme difficulty with being around people and a preoccupation with feeling guilty and unworthy. (R. at 167.) On mental status evaluation, Dr. Hughson described the plaintiff as sad and agitated, stating that he moved his hands and feet throughout the evaluation. (R. at 167-68.) MMPI-2 testing revealed that the plaintiff endorsed a great number of psychological difficulties. (R. at 168.) Dr. Hughson noted that the plaintiff was experiencing intense feelings of self-doubt and low morale, and had major problems with anxiety and depression. (R. at 169.) Dr. Hughson stated that the plaintiff tended to be high-strung and insecure, and had problems with loss of sleep and appetite and decreased personal tempo. (*Id.*) She noted that the plaintiff feels quite insecure and pessimistic about the future, and also that the plaintiff feels quite inferior, has little self confidence, and does not feel capable of solving his problems. (*Id.*) In addition, Dr. Hughson stated that the claimant felt that he was a condemned

person and had difficulties managing routine affairs. (*Id.*) She stated that the items the claimant endorsed suggested a poor memory, concentration problems, and an inability to make decisions. (*Id.*) Dr. Hughson noted that the plaintiff's hypersensitivity and fearfulness appear to be generalized and may be debilitating to him in social and work situations. (*Id.*) She described the plaintiff as a highly introverted and interpersonally avoidant person who felt very uneasy in close interpersonal involvements. (*Id.*) Dr. Hughson opined that the plaintiff likely had low potential for change. (*Id.*)

Dr. Hughson diagnosed caffeine induced anxiety disorder, nicotine dependance, a dysthymic disorder, a panic disorder with agoraphobia and an avoidant personality disorder. (R. at 171.) Hughson explained that the plaintiff used poor judgment, had little insight, was not stable emotionally, and was not predictable or reliable with his avoidant behavior. (*Id.*) Dr. Hughson opined that the plaintiff had serious limitations in his ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (R. at 172-73.) In addition, she opined that the plaintiff had unlimited ability to follow work rules; function independently; maintain attention/concentration; understand, remember, and carry out complex job instructions; understand, remember and carry

- 9 -

out detailed, but not complex job instructions; understand, remember and carry out simple job instructions; and maintain personal appearance. (*Id.*)

The plaintiff was seen on February 25, March 5, March 22, and April 7, 2004, at Wise County Behavioral Health Services for evaluation. (R. at 176-208.) The records indicate that the plaintiff was experiencing increased anxiety. At the initial evaluation on February 25, 2004, the plaintiff stated that he did not feel comfortable with the counselor at Cumberland Mountain Community Services in Lebanon and therefore he did not return. (R. at 191.) The plaintiff reported that he was experiencing a lot of depression and anxiety, that he gets nervous around other people, and that he has been depressed for years. (*Id.*) The plaintiff also stated that he is depressed because he has no job, no vehicle, no insurance, or anyway of taking care of himself. (*Id.*) It was noted that the plaintiff had a Global Assessment of Functioning (GAF) score of fifty, which, according to the Diagnostic and Statistical Manual of Mental Disorders, is consistent with an individual with serious impairments in social and occupational functioning. (R. at 192.) Depression and anxiety was noted during the clinical assessment. (*Id.*)

During the March 5, 2004, visit to Wise County Behavioral Health Sciences the plaintiff reported depression and mood disorder for five years or more. (R. at 193.) The plaintiff also reported not doing very much, watching T.V., and helping

his mother around the house.  (R. at 196.)  The symptom checklist noted moderate decrease in energy, social withdrawal, anxiety, panic attacks, avoidance behavior, worrying, inability to maintain normal body weight, apathy, depressed mood, feeling worthless, helplessness, hopelessness, loss of interest or pleasure, early morning wakening, and insomnia.  (R. at 197-200.)  Also noted was severe low self-esteem.  (R. at 199.)  The diagnosis was social phobia, dysthymic disorder, and nicotine dependence.  (R. at 102.)

On the March 22, 2004, visit to Wise County Behavioral Health Services it was noted that the plaintiff had commented on difficulties he had after his father and grandmother's death.  (R. at 177.)  During the April 7, 2004, visit the plaintiff reported that he had been "getting out some" because the clinician asked him to, but noted that he was not enjoying it much.  (R. at 176.)  The plaintiff was described as having a moderately depressed mood with congruent affect.  (*Id.*)

On August 25, 2004, an administrative hearing was held.  Turner testified that he had last worked as a DMV registration clerk in St. Paul, Virginia and had worked there for approximately thirteen years.  Among his duties were filling out paperwork, selling license plates to the public, answering phones, and generally waiting on the public. (R. at 234.)  The plaintiff testified that he generally dealt with the public just one person at a time.  (*Id.*)  The plaintiff also testified that he had hired part time help

- 11 -

Case 1:05-cv-00014-JPJ-PMS   Document 10   Filed 03/27/06   Page 11 of 18   Pageid#: 54

because his nervousness made the job difficult and that he usually missed one day per week. (*Id.*) After his employment with the DMV expired, the plaintiff attended college and received his bachelors degree in sociology and psychology in 1994. (R. at 62, 233, 237.) The plaintiff testified that he had difficulties in school and in attending classes that required public speaking or group discussions. (R. at 237.) The plaintiff testified that during his time at Clinch Valley College, his psychology professor noted the difficulty he was having with relating to others in the class and recommended he see a counselor. (R. at 238.) The plaintiff did go see a counselor during that time period and he usually went twice a month, however the counselor destroyed the plaintiff's records. (*Id.*)

The plaintiff testified that his problems became more severe after he lost his job, started college, and his father passed away. (R. at 239.) The plaintiff testified that he drank quite a bit of alcohol during the time period that he worked at the DMV in order to self-medicate and relax himself. (R. at 239-40.) He went on to testify that once he left his employment with the DMV, he no longer continued to drink. (R. at 240.) The plaintiff testified he did not have any friends and he rarely socialized with anyone, including his family. (R. at 240.) He used to enjoy playing the piano at church but had to quit because of his problems. (R. at 240-41.) He stopped going to church altogether at the time his father passed away. (R. at 241.)

The plaintiff testified that he had feelings of worthlessness especially because he was not able to provide for himself. (R. at 242.) He further explained that he had anxiety attacks which he described as a tight feeling in his chest with difficulty breathing, shaky hands, and sweating. (R. at 243.) The plaintiff testified that he worried all the time about his health, his family's health, not having a job, and things in society. (R. at 243-44.) He stated that he would not be able to go back to work because he could not cope with people. (R. at 245.)

Margaret Robbins, M.D., a medical expert, testified at the hearing that the plaintiff has had a life-long history of anxiety and social disease where he is uncomfortable with people. (R. at 249.) She noted that the plaintiff was doing fairly well while working at the DMV; however, she noted that he had some limitations while working there. (R. at 249.) Dr. Robbins noted that the plaintiff became more anxious and socially phobic after losing his job and losing his father, but further explained that it seemed as if he was doing fairly well as long as he was able to do some work and maintain his self-esteem and some independence. (*Id.*) Dr. Robbins stated that the plaintiff would be able to have some interactions with the public but he would need to pace himself and have some time during the job when he did not have to interact with the public. (R. at 250.) She further stated that these interactions with the public needed to be in a controlled setting. (*Id.*) Dr. Robbins stated that the

plaintiff's presentation is such that a lay person might be sensitive to plaintiff's phobia, but in the context of psychiatric treatment, plaintiff is not seen as being acutely ill. (R. at 250-51.)

The VE also was present and testified at the hearing. The ALJ asked the VE if there were any jobs available for a hypothetical individual who was currently forty-seven years of age, had an education as indicated by the plaintiff's file and as testified to by the plaintiff, past relevant work as testified to by the plaintiff, with no exertional limitations, who has non-exertional limitations as set forth by Dr. Hughson. (R. at 257.) The VE testified there would be no jobs available. (*Id.*)

Based upon the evidence, the ALJ found that Turner suffered from severe mental impairments but determined that these impairments did not meet or equal a listed impairment. (R. at 14, 16.) The ALJ determined that the plaintiff is unable to return to past relevant work, but has the residual functional capacity for work at all exertional levels not precluded by the limitations set forth by Dr. Hughson or by the symptoms testified by the plaintiff. The plaintiff's non-exertional limitations significantly narrow the range of work the plaintiff can perform. Considering the plaintiff's age, educational background, work experience, and residual functional capacity, he is incapable of making a successful adjustment to work that exists in significant numbers in the national economy. Based upon the testimony of the VE,

the ALJ found that work which the plaintiff could perform does not exist in significant numbers in the national economy. Accordingly, the ALJ found that the plaintiff was disabled as defined in the Act as of June 23, 2003, but not before. Therefore, the ALJ approved the plaintiff's request for SSI but concluded that, based on the application filed on June 23, 2003, the plaintiff is not entitled to a period of disability or DIB.

### *III. Analysis.*

The plaintiff contends that the ALJ decision is correct with respect to the determination that he is entitled to SSI benefits after June 23, 2003, but argues that the ALJ erred in determining that he was not disabled prior to June 23, 2003, and thus ineligible for DIB benefits.

In order to obtain DIB, the plaintiff must prove that his disability began on or before his date last insured. *See* 20 C.F.R. § 404.131 (2005). The plaintiff argues that he became disabled on January 31, 1991, the date he stopped working as a DMV agent. Turner has not engaged in substantial gainful activity at any time subsequent to his alleged onset date and his insured status for purposes of entitlement to disability insurance benefits expired on September 30, 1996. The ALJ determined that because the plaintiff failed to submit any medical records or treatment prior to

July 2003, the evidence did not show that he was disabled on or prior to September 1996 and that he was thus not entitled to DIB.

A Social Security Rulings ("SSR") provides that:

Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

. . . .

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, *available at* 1983 WL 31249.

In the instant case, there are no contemporaneous medical records because the plaintiff did not seek treatment until July 2003. Indeed, evidence in the record does seem to support the ALJ's conclusion that the plaintiff was not disabled prior to September 1996. First, the plaintiff did not stop working because of a medical impairment, but rather because his job closed. (R. at 237.) Furthermore, after leaving

the DMV, the plaintiff successfully performed in school and obtained his college degree. (R. at 233, 237.) The plaintiff argues that his life-long anxiety problems worsened after the death of his father in 1994, but it seems reasonable for the ALJ to conclude that the plaintiff's symptoms did not rise to the level of disability between that time and the date last insured given that he had so recently obtained a degree in sociology and psychology and had absolutely no treatment or medications during the period in question. (R. at 242, 246.)

Nonetheless, the law is clear that "in all but the most plain cases, a medical advisor [must] be consulted prior to inferring an onset date." *Bailey v. Chater*, 68 F.3d 75, 80 (4th Cir. 1995). Given the evidence about the effect that the death of the plaintiff's father in 1994 had on the plaintiff's mental health, it is not clear in this case that the plaintiff's onset date was after September 1996. While the ALJ did question an impartial medical expert, he did not specifically ask the medical expert her opinion on the onset date. Furthermore, the medical expert indicated that the death of the plaintiff's father may have exacerbated his symptoms. (R. at 249.) Therefore, I remand this case for further administrative action.

*IV. Conclusion.*

For the foregoing reasons, the parties' motions for summary judgment will be denied and the case will be remanded for further administrative consideration.

An appropriate final judgment will be entered.

                                  DATED: March 27, 2006

                                  /s/ JAMES P. JONES
                                  Chief United States District Judge